**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| DENNIS R. SERAMUR d/b/a DENNIS & SONS BUILDERS, individually and as the representative of a class of similarly-situated persons, | |
| Plaintiff, | |
| vs. | Case No. 2:18-cv-00244-PPS |
| PARADIGM LIAISON SERVICES, LLC and THE PARADIGM ALLIANCE, INC., | |
| Defendants. | |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
JOINT MOTION FOR SUMMARY JUDGMENT**

Defendants Paradigm Liaison Services LLC and The Paradigm Alliance, Inc. (collectively, "Paradigm") hereby submit the following brief in support of their joint motion for summary judgment filed concurrently herewith.

## I.   INTRODUCTION

Plaintiff, a residential and commercial builder/remodeler, has sued Paradigm for twice faxing him a one-page invitation to a *free* 90-minute pipeline safety program provided on January 18, 2018 on behalf of pipeline companies that operate in northern Indiana.  Plaintiff's sole claim in this lawsuit is that that invitation was sent in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227(b)(1)(C), and that he is therefore entitled to recover statutory damages.  Plaintiff's TCPA claim, however, fails as a matter of law because the uncontroverted facts establish that the faxed invitation was strictly informational in nature; neither it nor the safety program it described promoted the commercial availability of property, goods, or services.

In fact, the pipeline safety program referenced in the invitation faxed to Plaintiff is one that federal regulations *require* domestic pipeline operators to offer annually to defined stakeholder audiences – including persons, like Plaintiff, whose business may involve excavation near the miles of pipelines that transport petroleum-based and other hazardous materials every day through the region. There is no evidence that any property, goods, or services were offered for sale by Paradigm (or anyone else) to Plaintiff (or any other invitee) before, during, or after the safety program described in the invitation.

Because the faxed invitation sent by Paradigm to Plaintiff is *not* an "unsolicited advertisement" as defined by the TCPA, it simply is not subject to requirements of the TCPA. As such, it cannot possibly give rise to liability under the statute.  Paradigm is therefore entitled

2

to summary judgment, and respectfully asks that the Court grant its motion filed pursuant to Fed. R. Civ. P. 56, and dismiss Plaintiff's Complaint in its entirety.

## II.     STATEMENT OF MATERIAL FACTS

Paradigm submits the following statement of material facts ("SMF") pursuant to N.D. Ind. L.R. 56-1 in support of its joint motion for summary judgment.  This SMF cites and relies upon the contemporaneously-filed affidavits of Steve McGaffin and Rebecca Schwartz and the exhibits to those Affidavits.  Paradigm believes the following facts to be undisputed:

1.     Paradigm is in the business of providing public awareness and damage prevention compliance services to domestic pipeline operators in order to assist those clients in meeting the requirements of federal pipeline safety regulations (including 49 C.F.R. §192.616 and 195.440 as well as related petroleum industry standards.  (McGaffin Aff., ¶ 2; *see also* Schwartz Aff., ¶ 2, Ex. A, McGaffin Dep. Ex. 9, p 18.)

2.     According to the U.S. Department of Transportation's Pipeline & Hazardous Materials Safety Administration ("PHMSA"), federal pipeline safety regulations (49 C.F.R. §192.616 and 49 C.F.R. §195.440) require domestic pipeline operators to develop and implement public awareness programs that follow the guidance provided by the American Petroleum Institute (API) Recommended Practice (RP) 1162, "Public Awareness Programs for Pipeline Operators." (Schwartz Aff., ¶ 3, Ex. B.)

3.     API RP 1162 is an industry consensus standard that provides guidance and recommendations to pipeline operators for the development and implementation of enhanced public awareness programs.  (*Id.*; *see also* Schwartz Aff., ¶ 4, Ex. C.)

4.     The PHMSA provides summary tables of the API RP 1162 recommendations for printing and download.  (Schwartz Aff., ¶ 5, Ex. D).

5.      API RP 1162 addresses various elements of the requisite public awareness programs to be implemented by domestic pipeline operators, including the intended audiences, the kinds of information to be communicated, frequencies and methodologies for communicating the information, and evaluation of the programs for effectiveness.   (Schwartz Aff., ¶ 4, Ex. C, *passim.*)

6.      API RP 1162 provides that Stakeholder Audiences who should receive the pipeline operators' Public Awareness Program messaging include "Excavators," a term defined as "companies and local/state government agencies who are involved in any kind of excavation activities" (e.g., construction companies, excavation equipment rental companies, public works officials, public street road, and highway departments (maintenance and construction), timber companies, fence building companies, drain tiling companies, landscapers, and well drillers). (Schwartz Aff., ¶ 4, Ex. C at Section 3.4.)

7.      API RP 1162 states that Public Awareness Programs should include "enough information so that in the event of a pipeline emergency, the intended audience will know how to identify a potential hazard, protect themselves, notify emergency response personnel, and notify the pipeline operator."  (*Id.* at Section 4.)

8.      API RP 1162 provides that the Baseline Messaging for Excavators/Contractors should include information concerning:

- Pipeline purpose and reliability

- Awareness of hazards and prevention methods undertaken

- Damage prevention awareness

- One-call requirements.

- Leak recognition and response

- How to get additional information

(*Id.* at Table 2-1.4.)

9.      Paradigm's only clients for its public awareness and damage prevention compliance services are domestic pipeline operators and local distribution companies subject to 49 C.F.R. 192.616 and 49 C.F.R. 195.440.  (Schwartz Aff., ¶ 2, Ex. A, Dep. Ex. 9, p 18.)

10.      Paradigm does not sell or otherwise provide its public awareness and damage prevention compliance services to any private individuals or businesses *other than* domestic pipeline operators and local distributions companies. (McGaffin Aff., ¶ 2)

11.      Paradigm does not manufacture, sell, or lease "goods." (*Id.* at ¶ 4.)

12.      Paradigm does not sell or lease "property."  (*Id.* at ¶ 5.)

13.      In 2017, Paradigm was engaged by Indiana pipeline operators to assist them in complying with the regulatory requirements of 49 C.F.R. 192.616 and 49 C.F.R. 195.440 in connection with pipeline operations in Indiana. (*Id.* at ¶ 6.)

14.      As part of its services provided to Indiana pipeline operator clients, Defendant Paradigm Liaison Services, LLC planned and executed a January 18, 2018 pipeline safety awareness program specifically targeting northern Indiana-area excavators (stakeholder audience members); that program took place in Michigan City, Indiana ("the Michigan City Program).  (*Id.* at ¶7; *see also* Schwartz Aff., ¶ 2, Ex. A, McGaffin Dep. Tr. pp. 19:15-20:12.)

15.       Plaintiff Dennis & Sons Builders was identified by Paradigm as an appropriate pipeline invitee for the excavator-focused Michigan City program because its business was identified as: (a) one potentially involved in excavation based on its Standard Industrial Classification code ("SIC code"); (b) having a physical address within defined proximity to operational pipelines; and (c) located within a defined geographic area (likely a cluster of 2-3 counties) believed to be

most conveniently served by the Michigan City program's planned location. (McGaffin Aff., ¶9; *see also* Schwartz Aff., ¶ 2, Ex. A, McGaffin Dep. Tr. pp. 35:12-37:16.)

16.     Paradigm created a one-page pipeline safety program invitation (the "Invitation"), specifically directed to excavators, for the January 18, 2018 Michigan City program. (McGaffin Aff., ¶10; Schwartz Aff., ¶ 2, Ex. A, McGaffin Dep. Exs. 7 and 8; Pl's Compl. (Dkt #1) Ex. A.)

17.     Paradigm utilized the services of a third party vendor, Colorado-based WestFax, to fax the Invitation to a list of Michigan City program invitees specified by Paradigm. (McGaffin Aff., ¶12.)

18.     Paradigm uses multiple data sources to identify Stakeholder Audience members who should be invited to pipeline safety program, including but not limited to purchasing appropriately targeted data from third party vendor InfoUSA. (Schwartz Aff., ¶ 2, Ex. A, McGaffin Dep. Tr. pp. 34:16-35:19.)

19.     The Invitation was faxed to Plaintiff on behalf of Paradigm on two occasions prior to the date of the Michigan City program: once on December 28, 2017, and once on January 4, 2018. (McGaffin Aff., ¶ 12; Schwartz Aff., ¶2, Ex. A, McGaffin Dep. Exs. 7 and 8.)

20.     The Invitation describes a 90-minute "Safe Digging Event." that is "part of an ongoing national safety initiative to reduce damages." (Schwartz Aff., ¶2, Ex. A, McGaffin Dep. Exs. 7 and 8.)

21.     The Invitation offers invitees "complimentary training and the opportunity to interact with . . . local pipeline operators." (*Id.*)

22. The Invitation describes the Michigan City program as "part of an on-going national safety initiative to reduce damages," and represents that during the program participants will

"increase their knowledge of safe digging and damage prevention for underground utilities and emergency response." (*Id.*)

23.     The Invitation offers invitees a free meal (breakfast) and an opportunity to participate in a "discussion based Coordinated Response Exercise." (*Id.*)

24. The Invitation indicates that "[c]ritical emergency response planning and damage prevention information presented" at the program will include:

- Safety Initiatives
  - Pipeline Location
  - Hazard Awareness & Prevention Methods
  - Pipeline Maintenance Activities
- Defining High Consequence Areas
- Pipeline Purpose and Reliability
- Leak Recognition and Response
- Product Hazards and Characteristics

(*Id.*)

25.     The Invitation expressly indicates that "[t]here is no cost to attend" the Michigan City program. (*Id.*)

26.     No products, goods, or services are offered for sale (at any price or discount) on the face of the Invitation.  (*See id.*; *see also* McGaffin Aff., ¶11.)

27.     The Invitation requests that invitees RSVP for the pipeline safety program online at the following website: in.pipeline-awareness.com.  (Schwartz Aff., ¶ 2, Ex. A, McGaffin Dep. Exs. 7 and 8.)

28.     The Invitation does not specifically describe Paradigm or its services.  (*See id.*)

29.      Paradigm's own company website, "pdigm.com," is not mentioned on the Invitation. (*Id.*)

30.     The Invitation includes Paradigm Liaison Services' logo (approximately 1" x 1" in size) in the lower left corner and also provides the company's toll-free telephone number and fax number at the bottom of the page and in a font smaller than that used elsewhere in the document. (Schwartz Aff., ¶ 2, Ex. A, McGaffin Dep. Exs. 7 and 8.)

31.     The Invitation includes the following opt-out provision:   "To request to have a fax number removed from the list to receive information regarding Safety Awareness Training Programs, offered by Paradigm Liaison Services, LLC, please call 1-800-298-3750.  Once your request to be removed is received, our failure to comply with your request within 30 days is unlawful."  (*Id.*)

32.     The telephone number included in the opt-out provision, 1-800-298-3750 is one maintained by WestFax for the purpose of capturing (and honoring) any requests by invitees to cease receiving faxes from Paradigm.  (McGaffin Aff., ¶13; Schwartz Aff., ¶2, Ex. A, McGaffin Dep. Tr. p. 76:3-15.)

33.     The "in.pipeline-awareness.com" website mentioned on the Invitation is one created and maintained by Paradigm for its clients operating in Indiana. (McGaffin Aff, ¶17.)

34.     The Invitation sent to Plaintiff included an alpha-numeric program registration "Web Code" that was created by Paradigm and unique to Plaintiff.  (McGaffin Aff., ¶15; Schwartz Aff., ¶ 2, Ex. A, McGaffin Dep. Tr. p. 34:5-8.)

35.     The unique alpha-numeric "Web Code" assigned to Plaintiff for purposes of the January 18, 2018 Michigan City program invitation was "YT27-229I."  (McGaffin Aff., ¶16; Schwartz Aff., ¶2, Ex. A, McGaffin Dep. Tr. p. 34:5-8.)

36. The "in.pipeline-awareness.com" website not only captures pipeline safety program pre-registration (RSVP) information based on the unique WebCode supplied to each program invitee, but also provides information about pipelines and pipeline safety in Indiana.  (McGaffin Aff., ¶19; *see also* Schwartz Aff., ¶ 6, Ex. E.)

37.     No property, goods, or services are offered for sale by or purchase from Paradigm on the website "in.pipeline-awareness.com."  (McGaffin Aff., ¶20; *see also* Schwartz Aff., ¶ 6, Ex. E.)

38.     Paradigm selected the trainers for the January 18, 2018 Michigan City pipeline safety awareness program.   (McGaffin Aff., ¶22); Schwartz Aff., ¶2, Ex. A, McGaffin Dep. Tr. p. 17:17-22.)

39.     Paradigm created the presentation slide deck used by the trainers at the Michigan City program.  (McGaffin Aff., ¶ 23; *see also* Schwartz Aff., ¶ 7, Ex. F.)

40.     The only references to Paradigm in the electronic presentation slide deck used during the January 18, 2018 Michigan City program are: (1) in an intellectual property reservation of rights statement at the bottom of Slide 1/44; (2) Paradigm's appearing in an image of the in.pipeline-awareness.com website at Slide 4/44: (3) Paradigm's logo in the lower corner of photographs appearing at Slides 12/44 and 33/44; and (4) a very small Paradigm Liaison Services logo appearing on the lower right corner of each slide (directly across from a similarly-scaled "811 Call Before You Dig" program logo also on each slide).  (*See* Schwartz Aff., ¶ 7, Ex. F.)

41.     Paradigm created the "Indiana Pipeline Safety Program Guide" written materials made available to attendees of the Michigan City Program.  (McGaffin Aff., ¶24.)

42.     The "Indiana Pipeline Safety Program Guide" made available to attendees of the Michigan City program includes a short description of Paradigm's public awareness and damage prevention compliance services and provides the company's contact information on page 16 of 18 of the Guide. (*See* Schwartz Aff., ¶ 8, Ex. G.)

43.     No property, goods, or services were offered for sale by Paradigm to invitees to the Michigan City pipeline safety program before, during, or after that program.  (McGaffin Aff., ¶25.)

44. According to Paradigm's records, Plaintiff did not RSVP for or attend the January 18, 2018 Michigan City program to which the Invitation referred.  (McGaffin Aff., ¶21; Schwartz Aff., ¶2, Ex. A, McGaffin Dep. Tr. p. 34:9-15.)

### III.   BACKGROUND

Paradigm twice faxed Plaintiff an invitation to a free pipeline safety program that was scheduled to take place in Michigan City, Indiana on January 18, 2018 (the "Invitation").  SMF ¶19.  Plaintiff alleges that Paradigm faxed the Invitation in violation of the TCPA, and specifically in violation of 47 U.S.C. §227(b)(1)(C).  *See* Compl. ¶ 29.  But that provision of the TCPA applies only to the faxing of "unsolicited advertisements," which are defined at 27 U.S.C. 227(a)(5) as "material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."   *See also* 47 C.F.R. § 64.1200(f)(1) ("The term ***advertisement*** means any material advertising the commercial availability or quality of any property, goods, or services.").

The Invitation is not an unsolicited advertisement because it does not advertise the commercial availability or quality of Paradigm's (or anyone else's) property, goods, or services. The Invitation relates to a pipeline safety program, offered at no cost to attendees, on January 18, 2018 in Michigan City, Indiana ("the Michigan City program").  SMF ¶¶14, 21.  The Michigan City program was planned and executed by Paradigm on behalf of its clients—domestic pipeline operators who are required by federal law (Title 49 C.F.R. §§192.616 and 195.440) to annually offer such programs to certain classifications of persons and entities, ("stakeholders"), who live

10

and work in close proximity to the operators' pipelines.[1] SMF ¶¶2-6. This particular program targeted a class of stakeholders specifically described by the federal regulations: Excavators. SMF ¶¶6, 14.  That class includes homebuilders like Plaintiff.  SMF ¶6.

Paradigm created (and subsequently faxed) the Invitation to Plaintiff because it is in the business of providing regulatory compliance assistance services to pipeline operators.  SMF ¶ 1. Paradigm is hired and paid by its clients to plan, execute, and document the provision of pipeline safety programs those pipeline operators are *required* by federal regulations to offer to stakeholders.  *Id.*  Specifically, Paradigm: (1) plans pipeline safety program that are designed to meet the specific objectives required by federal regulations and applicable petroleum industry safety standards, (2) identifies stakeholder audiences who should be invited to such programs according to the regulations; (3) arranges convenient and appropriate locations and engages qualified trainers to conduct the safety program for stakeholders; (4) prepares and timely distributes program invitations to identified stakeholders; (5) creates both program-specific and supplemental pipeline safety-focused materials (including a website at which stakeholders can register for Indiana pipeline safety programs and/or learn more about pipeline safety generally); and (6) compiles data for its clients' use in auditing the effectiveness of their safety-centered efforts and completing mandatory federal compliance reporting.  SMF ¶¶1, 9, 13-16; *see also* Schwartz Aff., Ex. A, (McGaffin Depo Tr.) generally.

The Invitation Paradigm sent to Plaintiff did not promote the commercial availability of Paradigm's (or anyone else's) property, goods or services:

---

[1] "Stakeholders" are persons living and working within a specified proximity to operational pipelines carrying petroleum products, natural gas, and other hazardous materials, including local residents and businesses, public officials, and emergency service providers (first responders), who might either cause or simply be affected by an accident involving a pipeline.

- On its face, the Invitation simply provides information about the then-upcoming pipeline safety program; it mentions no commercially-available property, goods, or services for sale, at any price, to invitees. SMF ¶¶20-28.

- The nature of the pipeline safety program and the information to be presented was clearly described in the Invitation; the program was obviously intended to (and did) train attending stakeholders on key aspects of pipeline safety, precisely as contemplated by 49 C.F.R. §§192.616 and 195.440. SMF ¶24.

- The pipeline safety program referenced in the Invitation was specifically described as "[c]omplimentary," and was offered at *no charge* to invitees.  SMF ¶¶21, 24-25.

- The faxed Invitation was also not mere pretext for an offer to sell of property, goods, or services during or after the pipeline safety program:

  - There is no evidence suggesting that Plaintiff or any other invitee to the Michigan City program was offered an opportunity to purchase property, goods, or services from Paradigm (or anyone else) at any time before, during, or after the program. SMF ¶¶ 26, 37, 43.

  - None of the written materials shown to or distributed to attendees of Michigan City program promoted the commercial availability or quality of Paradigm's (or anyone else's) property, goods, or services.  SMF ¶¶39-43.

  - There is no evidence that any speaker at the pipeline safety program discussed the commercial availability or quality of Paradigm's (or anyone else's) property, goods, or services.

  - The website whose address is provided in the Invitation as a means for invitees to RSVP to the pipeline safety program does not discuss or promote the commercial

12

availability of property, goods, or services; none are offered for sale on the website. SMF ¶36-37.

o   Although Paradigm's logo and contact information appear (discreetly) on the Invitation (and program materials) to identify it as the source of those materials, *see* SMF ¶¶30-31, 40, 42, such inconsequential "marketing" is consistently found by courts to be insufficient to convert an informational fax like the Invitation into an "unsolicited advertisement" for purposes of TCPA liability.

Here, despite an generous discovery schedule and ample opportunity, Plaintiff has developed no evidence to even suggest – much less prove – that the Invitation Paradigm faxed is an "unsolicited advertisement" capable of giving rise to liability under the TCPA.  On its very face, the Invitation displays *no* qualities that could lead to that conclusion.  And unlike in many of the cases where courts have—primarily at the motion to dismiss stage—expressed skepticism about whether a "free" meeting or seminar is ever *really* free, here free really does mean free.  Paradigm's services are unique and highly tailored to its pipeline operator clientele's needs; it literally had no property, goods, or services to sell to an excavator program invitee like Plaintiff, and had absolutely no reason to stray from the safety-focused responsibilities Paradigm's clients had hired it to handle.

Paradigm's entitlement to summary judgment in this case could hardly be more evident.  The Invitation is exactly what it appears to be, and no more.  It informed invited stakeholders of the opportunity, available at no charge to them, to come learn potentially life and property-saving information, and it offered absolutely *nothing* for sale.  The Invitation is not an unsolicited advertisement, and, accordingly Defendants are entitled to summary judgment and dismissal of Plaintiff's TCPA claim.

## IV.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). But the court is bound only to draw those inferences that are in fact *reasonable*.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Marsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## V.    ARGUMENT

Plaintiff is seeking statutory damages on behalf of himself and a putative class based on Paradigm's transmission to him of a single document in alleged violation of the TCPA.  But the TCPA applies only to faxes that are *advertisements.*  The statue prohibits using "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C); *see also* 47 C.F.R. § 64.1200(a)(4) (the FCC's regulation stating a similar prohibition).  Congress clearly intended the statute to restrict only *commercial* fax advertisements, as opposed to non-commercial fax messages.  *Holmes v. Back Doctors, Ltd.*, No. CIV No. 09540-GPM, 2009 WL 3425961, at *3-4 (S.D. Ill. Oct. 21, 2009); *vacated in part on other grounds*, 695 F. Supp. 2d 843 (S.D. Ill. 2010); *see also Hinman v. M&M Rental Ctr., Inc.* 596 F. Supp. 2d 1152, 1163 (N.D. Ill. 2009). And whether a document

14

is an unsolicited advertisement is a question of law.  *Sandusky Wellness Center, LLC v. Medco*, 788 F.3d 218, 221 (6th Cir. 2015).

The Invitation Paradigm faxed to Plaintiff is not an "unsolicited advertisement."  Such a document must have a *commercial* purpose – that is, that it must advertise property, goods or services that can be bought or sold. *See* 47 U.S.C § 227(a)(5) (defining an "unsolicited advertisement" for purposes of the TCPA as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise");  *see also* 47 C.F.R. § 64.1200(f)(1) ("The term ***advertisement*** means any material advertising the commercial availability or quality of any property, goods, or services.").

Federal circuit courts have repeatedly held that "[t]o be an ad [for purposes of the TCPA], the fax must promote goods or services that are *for sale*, and the sender must have profit as an aim."  *Sandusky Wellness Ctr.,* 788 F.3d at 223-24; *see also Physicians Healthsource v. Boehringer Ingelheim Pharm.*, 847 F.3d 92, 95-97 (2d Cir. 2017) (the fax must have a "commercial purpose of promoting . . . products or services"); *Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*, 858 F.3d 1362, 1366-67 (11th Cir. 2017) ("the fax must draw attention to the 'commercial availability or quality' of . . . products to promote their sale."); *N.B. Indus. v. Wells Fargo & Co.*, 465 F. App'x 640, 642 (9th Cir. 2012) ("To be commercially available . . . a good or service must be bought or sold.").

The purpose of the Invitation, evidenced by both the substance of the documents attached to Plaintiff's Complaint and the highly relevant context surrounding the pipeline safety program to which refers (including the federal regulatory requirements pipeline operators offered the program to satisfy), was to promote pipeline safety awareness, not to sell goods or services.

15

    **1.  There Is No Mention of the Commercial Availability or Quality of Property, Goods, or Services on the Face of the Invitation**

A careful examination of Invitation Paradigm reveals nothing more than *information* about the location, date, time, substance, and other related details (including how to RSVP) about a *free* program.  *See* Pl's. Compl. (Dkt. #1) Ex. A, SMF ¶¶20-27.  The invitation makes no reference whatsoever to property, goods, or services being available for purchase from Paradigm (or anyone else) before, during, or after the January 18, 2018 program.  SMF ¶26.  It simply invites Plaintiff and other pipeline safety stakeholders identified by federal regulations—in this instance excavators—to come enjoy a free breakfast and spend 90 minutes learning from a well-qualified safety expert how to keep themselves and their community safe when digging.

The topics on the agenda for the Michigan City program are specifically described in the invitation as: "Safety Initiatives," including "Pipeline Location," "Hazard Awareness & Prevention Methods," and "Pipeline Maintenance Activities;"  "Defining High Consequence Areas," "Pipeline Purpose and Reliability," "Leak Recognition and Response," and "Product Hazards and Characteristics."  SMF ¶24.  There is no mention of any commercially available property, goods or services.  SMF ¶26.

The Invitation asks recipients to RSVP if they plan to attend the program by registering using a unique assigned Web Code at a specified website, "in.pipeline-awareness.com."[2]  SMF ¶27.  In addition to providing a way for program invitees to quickly and easily RSVP, the in.pipeline-awareness.com website includes links to various Indiana-centric pipeline-related public safety resources.  SMF ¶36.  No property, goods, or services are available for purchase on in.pipeline-awareness.com.  SMF ¶37.

---

[2] That website was created by Paradigm for its clients (Indiana pipeline operators), but is not Paradigm's corporate website.  The latter is "pdigm.com, and that website does not appear on the Invitation. SMF ¶29.

The Invitation further informs the invitee that the pipeline safety program is "complimentary," and expressly states that there is "no cost to attend" it.  SMF ¶21.  There is no reference anywhere in the Invitation to a price to attend, payment methods accepted, coupon codes, or discounts.  *See* Pl's Compl. (Dkt. #1) Ex. A.  There is also no indication in the invitation that any property, goods, or services will be available for purchase (from Paradigm or anyone else) by attendees during or after the program.  (*Id.*)  Even the available meal is free; the Invitation indicates that a complimentary breakfast will be available.  SMF ¶23.

### 2. Nothing About the Invitation Justifies Treating It as Anything Other Than the Informational Document It Is.

The primary purpose of the Invitation is to *inform* excavators that they have a convenient and free opportunity to learn about pipeline safety from a trained instructor, including how to respond in the event of a pipeline-related incident.  For purposes of the TCPA, if a document's "primary purpose is informational, rather than to propose commercial products, it does not constitute an unsolicited advertisement."  *Bais v. Yaakov of Spring Valley v. Alloy, Inc.* 936 F. Supp. 2d 272, 282 (S.D.N.Y. 2013); *see also Sandusky Wellness Center, LLC v. Medco, Health Solutions et al.,* 2014 WL 6775501 (N.D. Ohio Dec. 2, 2014) (noting that a fax is informational if its "primary purpose" is to communicate information, rather than to promote a product.) The Federal Communications Commission, the agency responsible for overseeing the fax-related provisions of the TCPA, has expressly recognized "informational messages" as one of four types of messages that are beyond the scope of the statute.  *See Physicians' Healthsource, Inc. v. Janssen Pharmaceuticals, Inc*., No. 12-2132, 2013 WL 486207 at *3 (D. N.J. Feb. 6 2013) (citing FCC Rules and Regulations at *25,972-973); *see also N.B. Indus. v. Wells Fargo & Co*., 2010 WL 4939970 at *8-11 (N.D. Cal. Nov. 30, 2010).

Federal courts routinely grant dispositive motions lodged by TCPA defendants able to demonstrate that the faxes they sent had no commercial purpose and were informational (only). *See e.g. Holmes,* 2009 WL 3425961 at *1 (industry news articles determined to be informational); *N.B. Indus.,* 2010 WL 4939970 at *11 (notice of award ceremony inviting applications is informational), *Phillips Randolph Ent. LLC b. Adler-Weiner Research Chicago, Inc.*, 526 F. Supp. 2d 851, 853 (N.D. Ill. 2007) (notice of new research study was not an advertisement).

Because faxes found to be informational are not subject to the TCPA, there has been a fair volume of litigation over what other factors might somehow justify treating a fax that appears to be merely informational as an advertisement.   But the distinction between an informational message and an unsolicited advertisement must be made on a case-by-case basis in TCPA actions.   *GM Sign, Inc. v. MFG Com, Inc.,* 2009 WL 1137751 at *2 (N.D. Ill. Apr. 24, 2009).   Paradigm does not believe any of these considerations should cause this Court to view the Invitation faxed to Plaintiff as an advertisement, Paradigm anticipates that Plaintiff may attempt to such arguments in his Response, so will address at least some of them here – briefly and preemptively in this opening brief.

**Company Logo**. Paradigm anticipates that Plaintiff may attempt to argue that the presence of Paradigm's company logo on the pipeline safety program invitation effectively converts the invitation to an advertisement for purposes of the TCPA.   Defendant Paradigm Liaison Services' logo is certainly visible in the lower left corner of the invitation in an area about one square inch in size (a little over 1% of the page).   But documents with only an *incidental* amount of advertising are not advertisements under the TCPA. *See Boehringer Ingelheim Pharms., Inc.,* 2015 WL 144728 at *3 n. 3 (appearance of a logo without more does

not transform an informational message into an advertisement).[3] Other courts have similarly rejected the notion that the mere appearance of a defendant's logo on a fax transforms the entire document into advertising for purposes of the TCPA. *See P&S Printing LLC v. Tubelite*, No. 3:14-cv-1441 (VAB), 2015 WL 4425793 at *6 (D. Conn. July 15, 2015) (acknowledging that defendant "may experience some incidental benefit of having its logo and a few positive phrases in the communication," but denying that that those alone turn the document into an advertisement); *Holmes v. Back Doctors, Ltd*, 695 F. Supp. 2d 843, 851 (S.D. Ill. 2010) (holding that a fax consisting of one seventh (14%) advertising could not convert that entire document into an advertisement); *N.B. Indus. Inc., 4*65 F. App'x at 643 (finding that de minimis advertising, including logos, that constituted a "very low percentage" of the message were "insufficient to transform faxes that were largely permissible unto prohibited communications under the TCPA.")

**Company Contact Information**.  Inclusion of Paradigm's contact information, and, in this case, specifically its corporate phone and fax numbers, which appear at the bottom of the Invitation, are likewise appropriately viewed as mere incidental advertising at most.  They should not be enough to convert an informational fax into an advertisement – particularly when the contact information appears in small font at the bottom of a fax.  *See Physicians' Healthsource*, 2013 WL 486207 at *5 (concluding that inclusion of Defendants' names to identify the sender of the fax and appearing only in moderately sized and appear only at the margins of the fax do not covert a fax into an advertisement); *see also N.B. Indus*., 2010 WL 4939970 at *8 (fax is not an advertisement simply because it directs the recipient to the defendant's website of a sender for more information); *Ameriguard*, 2006 WL 1766812 at *1-2

---

[3] Moreover, the TCPA expressly *requires* the sender's name to appear on the fax when sending informational messages.  *See* 47 U.S.C. §227(d)(1)(B).

(inclusion of contact information to provide the fax recipient a means of obtaining more information about a planned medical research study is mere incidental marketing material).

**Potential for Ancillary Benefit.** Plaintiff may also attempt to argue that Paradigm has the potential to gain some ancillary benefit by sending the informational Invitation. Including, for instance, greater name recognition, favorable public opinion or perhaps, someday, a new client. But the fact that Paradigm *might* ultimately obtain some ancillary commercial benefit from sending its informational message does not justify treating it as an advertisement now: "[t]he potential to gain some benefit from sending information, without the presence of additional commercial statement in the message, is insufficient to transform and informational message to advertisement." *Physicians Healthsource*, *Inc. v. Janssen Pharms.*, *Inc.*, 2013 WL 486207 at *4. "In analyzing whether a fax crosses the line from 'informational' to 'advertisement,' courts should consider 'whether the message is an advertisement which tends to propose a commercial transaction, not whether there is some ancillary benefit to either party.'" *Physicians' Healthsource, Inc. v. Boehringer Ingelheim Pharms., Inc.*, 2015 WL 144728 at *3.

**Being a For-Profit Company.** Although rare, there have been a handful of TCPA cases in which plaintiffs have attempted to suggest that just because a defendant is a for-profit business, the company's faxes should all be assumed to have a commercial motive and be treated as advertisements. Ample case law, however, establishes that the for-profit status of a corporate defendant does not transform every fax it sends into an advertisement. *See Janssen Pharms*, 2013 WL 486207 at *5 (finding that an unsolicited fax from pharmaceutical company about reclassification of drug—without reference to how or where the drug was available for purchase, is not actionable under TCPA); *N.B. Indus.*, 465 Fed. Appx. at 643 (finding that fax about Asian

Business Leadership Award from a commercial bank that sold services to Asian businesses was not an advertisement).

### 3.   Paradigm's Pipeline Safety Program Invitation Harbors No Commercial Pretext.

Some courts considering TCPA claims, have held that a fax need not explicitly mention a commercially available product or service, or express an intent by the defendant to market its products or services in order to be actionable under the TCPA, but that it is enough to allow a claim to proceed if the fax was a "pretext" to marketing the defendant's goods and services. *See Fulton v. Enclarity*, 907 F.3d 948, 954 (6th Cir. 2018) (noting that the TCPA covers faxes that serve as "pretext for a commercial solicitation") (quoting *Sandusky Wellness Center, LLC v. Medco*, 788 F.3d at 218, 225 (6th Cir. 2015)); *see also North Suburban Chiropractic Clinic, Ltd. v. Merck & Co., Inc.*, No. 13 C 3113, 2013 WL 5170754, at *4 (N.D. Ill. Sept. 13, 2013); *Physicians' Healthsource, Inc. v. Janssen Pharms, Inc.*, Civ. No. 12-2131 (FLW-TJB) 2015 WL 3827579 at *4 (D. N.J. June 19, 2015) (considering the factual context such as the timing of the fax and whether it was part of the defendants' overall marketing campaign). Courts have certainly recognized that even a document that contains no "overt sales pitch to its recipient" and carry at least a *prospective* commercial pretext. *See*, *e.g*., *Mussat v. Enclarity, Inc.*, No. 16-CV-07643 2018 WL 1156200 at *3 (N.D. Ill. March 5, 2018) (citing *Green v. Time Ins. Co.*, 629 F. Supp. 2d 834, 837 (N.D. Ill. 2009)). But even these cases acknowledge the fundamental premise that such commercial pretext exists only when the fax at issue "prompts a recipient to take action that necessarily exposes the recipient to advertising of the sender's goods or services." *Id.* at *4.

Here, discovery is complete and the proof is in: the undisputable facts establish that there *was no pretext* in the Invitation Paradigm faxed to Plaintiff. There is simply no evidence at all that the Invitation was *intended* to prompt an action that would expose him to advertising of

Paradigm's goods or services.  To the contrary – all evidence suggests that the Invitation was intended to prompt an action that would expose Plaintiff to pipeline safety training.  In other words, the Michigan City program was precisely what the Invitation indicated it would be.

Although Plaintiff did not attend the Michigan City program, SMF ¶44, Paradigm has produced both the electronic slide deck used by the trainer for that program and the hard copy "Program Guide" offered to attendees.  SMF ¶¶39-42.  The slide deck reveals that the safety-focused presentation was plainly designed to precisely meet the federal regulatory requirements imposed upon Paradigm's pipeline operator clients.  SMF ¶¶2, 5  It contains no discussion of the commercial availability of Paradigm's services; the only signs of Paradigm in the slides are the incidental advertising created by the inclusion of a (tiny) Paradigm Liaison Services logo at the bottom of each slide (across the screen from the "811 Call Before You Dig" logo that also appears on every slide); a handful of company logos appearing on proprietary photos included in the presentation; and a short statement on the first page reserving Paradigm's intellectual property rights to the presentation it created.  SMF ¶40.  This incidental reference is certainly not enough to sustain a "pretext" argument.

The hard copy Pipeline Safety Program Guide offered to attendees of the Michigan City program likewise bears no indication suggesting that the program included any discussion about the commercial availability of Paradigm's services.  Again, Paradigm's logo appears on pages 16 and 18 of 18), its contact information appears on page 16, and about half of page 16 offers a description of the public awareness and damage prevention compliance services Paradigm offers to pipeline operators and local distribution companies. These mentions are, at most, just more incidental advertising, and are in no way to sufficient to justify classifying Paradigm's informational pipeline safety program invitation as an advertisement on pretext grounds.

From a factual perspective, the facts here aligns far more precisely with the many cases in which other federal courts have found *no commercial pretext* for faxes inviting recipients to free seminars.  One district court, for instance, held that a defendant's fax alerting targeted recipients to a free seminar where they could learn about that defendant's billing processes was not an advertisement.  *Phillip Long Dang v. XLHealth Corp.*, No. 109-CV-1076-RWS, 2011 WL 553826, at *4 (N.D. Ga. Feb. 7, 2011).  Where the defendant was only seeking to inform the program invitation recipients about its payment process, and not seeking to promote its services, the court found the fax was not an advertisement.  *Id.*  And in another, the district court rejected plaintiff's TCPA claim where the unsolicited fax message invited dental providers to attend a free training webinar regarding defendant United Healthcare's web portal.  *See Orrington v. Scion Dental, Inc.*, No. 17-CV-00884, 2017 WL 2880900, at *3 (N.D. Ill. July 6, 2017).  The court found that where there was no indication that the fax was anything other than a transactional communication, and the fact that the defendant might gain an ancillary economic benefit from the fax was not sufficient to show a TCPA violation.  *Id.*; *see also Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, , 2013 WL 486207, at *5; *see also Phillips Randolph Enters., L.L.C. v. Adler-Weinger Research Chi., Inc.*, 526 F. Supp. 2d 851, 853 (N.D. Ill. 2007) (granting defendant's motion to dismiss in part based on plaintiff's failure to identify any products or services advertised), *Ameriguard, Inc. v. Univ. Kan. Med. Ctr. Research Inst., Inc.*, No. 06-0369-CV-W-ODS, 2006 WL 1766812, at *2 (W.D. Mo. June 23, 2006) (*aff'd in Ameriguard, Inc. v. Univ. Kan. Med. Ctr. Research Inst., Inc*., 222 F. App'x 530, 530 (8th Cir. 2007) (finding there is no suggestion that the fax acted as a "smokescreen to mask a true purpose of engaging in the commercial activity of providing information or selling the medicine.").

Here, even after more than a year of discovery, there are no facts that could support a supposition of pretext of commercial intent, and Paradigm is entitled to summary judgment.

## VI.   CONCLUSION

For the reasons set forth above, Paradigm respectfully requests that this Court conclude that the fax at issue in this case – the Invitation to a January 18, 2018 regional pipeline safety program – was not an "unsolicited advertisement," and, because it cannot serve as the basis for the imposition of liability under the TCPA, grant summary judgment in favor of Paradigm.

Dated:  January 31, 2020

SHOOK, HARDY & BACON L.L.P.

By:  /s/ Rebecca J. Schwartz_____
    Rebecca J. Schwartz, #46341

2555 Grand Blvd.
Kansas City, Missouri  64108-2613
Telephone:  816.474.6550
Facsimile:  816.421.5547

Katherine L. Shelby
PAGANELLI LAW GROUP
10401 N. Meridian Street, Suite 450
Indianapolis, IN 46290
Tel: 317.550.1855
Fax: 317.569.6016

ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2020, a copy of the foregoing was served by electronic mail to all N.D. Indiana ECF-registered counsel in this matter:

Mr. Brian Wanca
Mr. Ryan Kelly
Mr. Ross Good
ANDERSON + WANCA
3701 Algonquin Rd.  Ste. 500
Rolling Meadows, IL  60008
bwanca@adersonwanca.com
rkelly@andersonwanca.com
rgood@andersonwanca.com

Katherine L. Shelby
PAGANELLI LAW GROUP
10401 N. Meridian Street, Suite 450
Indianapolis, IN 46290
Tel: 317.550.1855
Fax: 317.569.6016
kshelby@paganellilawgroup.com

       _/s/   Rebecca J. Schwartz_
Counsel for Defendants Paradigm Liaison Services, LLC and The Paradigm Alliance, Inc.